UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

WANDA LARACUENTE,

    Plaintiff,

v.

MEDICAL DATA SYSTEMS, INC. d/b/a
MEDICAL REVENUE SERVICES, LLC,
and JUPITER MEDICAL CENTER, INC.,

    Defendants.
_____/

CASE NO:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Wanda Laracuente (hereinafter, "Ms. Laracuente" or "Plaintiff"), by and through counsel, brings this action against Defendants, Medical Data Systems, Inc. d/b/a Medical Revenue Services, LLC (hereinafter, "MDS" or "Defendant"), and Jupiter Medical Center, Inc. (hereinafter, "JMC" or "Defendant") and states as follows:

### INTRODUCTION

1. This is an action for damages brought by an individual consumer based on Defendants' alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Florida Consumer Collection Practices Act ("FCCPA"), Chapter 559, Florida Statutes.

### PARTIES

2. Ms. Laracuente is a natural person who resides in Jupiter, Florida.

3. Defendant JMC is a Florida corporation with its principal place of business at 1210 S. Old Dixie Highway, Jupiter, FL 33458, and conducts business in the State of Florida.

-1-

4. Defendant MDS is a Florida corporation with its principal place of business at 2001 9th Avenue, Suite 312, Vero Beach, Florida.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

6. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiff's claims under the Florida Consumer Collection Practices Act, Fla. Stat. ("FCCPA"), § 559.55, et seq., because those claims share a common nucleus of operative facts with Plaintiff's claims under the TCPA. S*ee LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ("[FCCPA's] remedies are 'cumulative to other sanctions and enforcement provisions' for any violation by an out-of-state consumer debt collector.").

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

8. Within the past forty-eight months, JMC began calling Ms. Laracuente on her cellular phone at phone number (XXX) XXX-1612, in connection with the collection of a medical debt allegedly incurred by Ms. Laracuente.

9. During one of the initial calls, Ms. Laracuente explained to JMC that there was no way she could pay the debt and communicated her desire that JMC cease calling her.

10. On at least one occasion, Ms. Laracuente spoke to a male representative and agent of JMC, and explained that she had no means to pay the debt because she had stopped working in order to care for her daughter, who was very sick and undergoing treatment for cancer.

11. In response, JMC became very rude and abusive and stated something substantially similar to, "Are you kidding? You spend money on other things but you aren't going to pay your hospital bill?"

12. In addition, JMC used profanity towards Ms. Laracuente.

13. Ms. Laracuente was incredibly upset by the abusive and demeaning manner in which JMC treated her, and she communicated her desire that JMC cease calling her.

14. Despite this communication, JMC continued to call Ms. Laracuente on her cellular phone in connection with the collection of the debt.

15. In or about the Spring of 2015, JMC transferred and/or assigned the account at issue to MDS for purposes of collection.

16. MDS began calling Ms. Laracuente on her cellular phone from various phone numbers, including but not limited to (866) 631–4680.

17. Shortly after MDS began calling her, Ms. Laracuente explained her situation to MDS, informing MDS that she could not pay the debt because she was not working due to her daughter's grave illness.

18. Additionally, on more than one occasion, Ms. Laracuente communicated her desire that MDS cease calling her.

19. Despite these communications, MDS continued to call Ms. Laracuente on her cellular phone for the purpose of collecting the debt.

20. On more than one occasion, MDS called Ms. Laracuente using a pre-recorded or automated voice recording, which would instruct Ms. Laracuente to wait on the line for the next available account representative.

21. On August 17, 2016, Ms. Laracuente's daughter passed away after her body rejected a bone marrow transplant from Ms. Laracuente.

22. Defendants' collection efforts, including but not limited to its telephone calls, caused Ms. Laracuente emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

23. Defendants' collection efforts also intruded upon Ms. Laracuente's privacy.

24. In addition, each time Defendants placed a telephone call to Ms. Laracuente, Defendants occupied Ms. Laracuente's telephone number such that Ms. Laracuente was unable to receive other phone calls at that telephone number while Defendants were calling her,

25. Defendants' harassing telephone calls also forced Ms. Laracuente to lose time by having to tend to Defendants' unwanted calls, diverted Ms. Laracuente's time and attention away from her daughter, with whom Ms. Laracuente had precious little time remaining.

## COUNT ONE
### Violations of the Telephone Consumer Protection Act
### (as to both JMC and MDS)

26. Plaintiff re-alleges and incorporates by reference Paragraphs 8 through 25 above as if fully set forth herein.

27. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

28. The TCPA provides, in part:

(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

(1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

\* \* \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

29. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

30. Plaintiff was the "called party" in each telephone call Defendants placed to Plaintiff's cellular telephone.

31. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

32.     Defendants violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Plaintiff on her cellular telephone without Plaintiff's prior express consent or after such consent had been revoked.

33.     In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

34.     The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

35.     In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute.  *See Roylance v. ALG Real Est. Servs., Inc.* 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

36.     Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA.  *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

37.     Defendants voluntarily placed non-emergency telephone calls to Plaintiff's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

38. Defendants' violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT TWO
### Violations of the Florida Consumer Collection Practices Act
### (as to both JMC and MDS)

39. Plaintiff re-alleges and incorporates by reference Paragraphs 8 through 25 above as if fully set forth herein.

40. Defendant JMC is a "creditor" as that term is defined in the FCCPA, Fla. Stat. § 559.55(5).

41. Defendant MDS is a "debt collector" as that term is defined in the FCCPA, Fla. Stat. § 559.55(7).

42. Ms. Laracuente is a natural person obligated or allegedly obligated to pay a debt to Defendants, and is therefore a "consumer" or "debtor" as defined by the FCCPA § 559.55(8), and is a person whom the act was intended to protect.

43. Defendants attempted to collect a "debt" within the meaning of FCCPA, Fla. Stat. § 559.55(6).

44. Defendants willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Plaintiff with such frequency as can reasonably be expected to harass Plaintiff, or engaging in other conduct which can reasonably be expected to abuse or harass Plaintiff.

45. JMC willingly and knowingly violated Fla. Stat. § 559.72(8) by using profane, obscene, vulgar, or willfully abusive language in communicating with Plaintiff.

## JURY DEMAND

46. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

47. Plaintiff prays for the following relief:

    a) An order enjoining each Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    b) Judgment against each Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendants made in violation of the TCPA.

    c) Judgment against each Defendant for actual damages, statutory damages, costs and reasonable attorney's fees, plus punitive damages pursuant to Fla. Stat. § 559.77.

    d) For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: March 23, 2017

By: /s/ Sharina T. Romano
Sharina T. Romano, Esq.
Florida Bar No.: 65501

HYSLIP & TAYLOR, LLC, LPA
1100 W. Cermak Road, Suite B410
Chicago, Illinois 60608
(P) 904-853-3050
(F) 312-361-3509
(E) sharina@fairdebt411.com
*Counsel for Plaintiff*